Article 24.1 of the U.S.-Canada Tax Treaty provides that a U.S. citizen or resident may claim a foreign tax credit against the United States income tax only in accordance with the provisions and subject to the limitations of the law of the United States, a phrase the Court of Federal Claims dubbed the U.S. law limitation. The Court of Federal Claims' narrow interpretation of the U.S. law limitation to incorporate only the Code's rules for computing foreign tax credits finds no support in the treaty's text, whose plain meaning easily extends to including sections 27 and 901 of the Code, which restrict foreign tax credits to applying against Chapter 1 taxes. Because the net investment income tax in Section 1441 was enacted in Chapter 2A of the Code, no foreign tax credit may be applied to it under the Code. And because Article 24 conditions any credit against the United States income tax on being in accordance with the provisions and limitations of U.S. law, are there any other income taxes aside from the NIIT located outside of Chapter 1? Income tax, no. But I would note that even within Chapter 1, there are Chapter 1 taxes against which the foreign tax credit cannot be applied. And you'll see in the last sentence of Section 901A, it refers to 26B, which is a list of exclusions. Those are all in Chapter 1. They're income taxes. Yes. But they're not covered by the U.S. foreign tax credit. So under the trial court's reading, would those be subject to a foreign tax credit, too? Well, the court didn't address that. But they're income taxes. I mean, that's what I struggled with. I mean, it didn't come up, I don't think, at the trial court. But the trial court's reasoning, as far as I can tell, is the convention defines U.S. income tax very broadly in the definitional section. That establishes an independent right to offset foreign taxes against anything that's defined broadly as a U.S. income tax by the credit. Correct. That's how it works. If that's the case, then the foreign tax credit would apply not only to the NIIT, but to all those 26B taxes as well. I'm not asking you to agree. I don't agree with this position at all.  That's the logical conclusion of the federal claims position, isn't it? I think that that's probably correct. Of course, the problem with the court's reading is that there's no textual basis for limiting this to the computational provisions. Section 24.1 exposes— Well, I guess what I just suggested is what I see as the most problematic point for your argument is the convention does define, in the definitional section, income taxes very broadly. And so what are we to do with that when we come to the foreign tax credit section in Article 24? Because it does say—I mean, I know your answer is the limitations clause, but it does repeat the phrase United States tax on income, which seems to broadly mirror the definitional section. Well, but the clause, the provisions and limitations language is— It's in the same— —the condition— It's in the same sentence. Right.  But it conditions credit against U.S. income tax.  And so the question here is does the provisions and limitation language, is it broad enough to include sections 27 and 901A of the code? And of course it does. I mean, it's written very broadly to include all the provisions and limitations of U.S. law, not just the  If it had wanted just to apply calculations rules, it could have probably referenced calculation rules. Yes, absolutely. It could have done that. In fact, in later provisions, it references calculation rules and then specifically provides for deviations from U.S. law and the calculations rules, right? In paragraphs 4— 4, 5, and 6. 4, 5, and 6. What paragraph 4 is doing, that's the three-byte rule, where essentially you're prioritizing the taxation. It's a special ordering rule. And then, of course, in 6, you have the resourcing provision. And we think that that—I'm sorry. Yeah, no, I'm just sorry. I find—I don't think any of us are tax lawyers. Tax law is very hard, and we don't see very many of us. I don't think I need to understand specifically how 4, 5, and 6 works, but it does seem like there are specific rules that apply under the convention that wouldn't otherwise apply to the foreign tax credit. Is that right? Sorry, could you repeat that? There are specific rules under this convention that wouldn't otherwise apply to the foreign tax credit purely under the Internal Revenue Code. Yes, I think that's true. So when the parties wanted to deviate from the Internal Revenue provisions, they wrote it into the agreement. Yes, yes. And because of the resourcing provision in paragraph 6, we think that that illustrates that the parties did understand the code to apply to paragraph B. And so—because there would be no other reason to have it there. So I guess my other question, main question on this point is, this 1411 tax was enacted long after this agreement. Yes. And so at the time the parties entered into this agreement, there was no contemplation whatsoever of this kind of tax being enacted that's an Internal Revenue tax outside the code. And so we're left grappling with what the parties would have intended, and we have your view that this limitations clause applies. But then we have, I think, from them the broader statements that any similar taxes in the future should be treated the same. How do we sort that out? Well, I think nothing in enacting the NIT in Chapter 2A changed what the parties understood paragraph—how they understood paragraph 241—242A—excuse me, 241 to work. The foreign tax credit, of course, has always been restricted to applying against Chapter 1 tax. And again, just referencing the exclusions— The title of Article 24 is Elimination of Double Taxation, right? Yes. So that clearly was the expectation of the parties to the treaty. Was it not? Well, the terms of the credit govern, and it is conditioned on the provisions and limitations of U.S. law. And just stepping back to the previous point, I want to emphasize that since we talked earlier about the exclusions within Chapter 1 of taxes against which the foreign tax credit cannot be applied, the NIT is no different from that. It's just located outside of Chapter 1. Do we know why it's located outside of Chapter 1? Is there any legislative history or any even common sense reason for it not to be in Chapter 1? I don't know of any legislative history on that. In terms of common sense, it would seem significant to supporting the health care cost because it's a special tax for that. So you would speculate it has something to do with where the revenue was going to go, but there's no indication it has anything to do with it. I mean, there's no indication. We don't know for sure. But the NIT is not different from these Chapter 1 taxes that were already excluded. I mean, the parties understood that at the time they signed. The trial court suggests then that you're putting an awful lot of weight on what may just be a happenstance of Congress creating Chapter 2A when, for all intents and purposes, this NIT looks just like everything in Chapter 1. Do we need to, in order to side with you, see that there's some meaningful significance to the fact that Congress, for whatever reason or no reason, created Chapter 2A instead of Chapter 1? Well, the fact remains, although we don't know the reason why, the fact is it did what it did. But what it did, as far as the foreign tax credit is concerned, doesn't change how the parties understood the credit to operate, which is that it would exclude taxes. Congress knew when it enacted 1411 that the foreign tax credit under U.S. law only applied to Chapter 1 taxes with certain exceptions. And so can't we presume by placing it outside of that they intended it not to be included in the foreign tax credit? I think you can. I mean, you have to see it. I mean, they also could have just put it in that list of 26B and said these also shall be considered for foreign tax credits. It's effectively the same thing either way. Correct. Correct. Are there any other tax consequences other than this foreign tax credit matter that are affected by putting the 1411 tax in Chapter 2 as opposed to Chapter 1? Do you mean with respect to the foreign tax credit itself? Any other tax consequence. Is it purely the only distinction between the 1411 tax being in Chapter 2 versus the enumerated taxes in Chapter 1 that the Chapter 2 tax gets no foreign tax credit? Any other consequences? I've not looked into that. I mean, I don't know what, I mean, beyond the foreign tax credit implications. The foreign tax credit scheme itself is highly articulated, so the tax credit makes a difference here. I'm sure that's not necessarily an answer to your question, but I may be misunderstanding it. Judge Solomonson's view seemed to be that your interpretation of the U.S. law limitation is completely illogical. It really just comes down to it applies when the government says it applies and doesn't apply otherwise. Can you help me understand what the logical principle is that governs when the U.S. law limitation has an impact? Sure. I think what the court below did not understand is that paragraph 24.1 creates a general rule that, like, they're setting the table. This is how it's going to apply as a general rule, that the credit against U.S. income tax is conditioned on being in accordance with the provisions and subject to the limitations of the code. There are some modifications after that to the general rule, and so a treaty can certainly offer – it can say whatever it wants. It can give the parties whatever they negotiated for, but the fact that there are modifications to that rule doesn't mean that everything else that's covered by that rule just drops out. So if the issue is, can the tax treaty create a credit that the U.S. code doesn't allow or does not create, if the question is just that broad, you would say, yes, the tax treaty could. Yes, it could, but it did not here. The specific one that they're trying to claim it did not, but it created some others, you would say, in paragraphs 4, 5, and 6, maybe? Well, we didn't brief paragraph 5, but that may be a case, and it's not relevant here, but I would note that in the technical explanation at pages 260, it says that paragraph 4B is subject to the rules of paragraph 1, and Canada endorsed the technical explanation. The technical explanation also says that paragraph 6 is necessary to achieve the objectives of 4B and 5C. That's on appendix page 263. So these provisions are all interrelated and are looking back to paragraph 24, 1, I think. I have a quick question about the amicus. Page 12, they make a reciprocity argument and suggest your interpretation is inconsistent with the reciprocity norm. Can you help me understand the government's response? Sure. I do understand that the terms of a treaty need not be identical. And they aren't here. Both countries have conditioned the tax credit on applying domestic law, and so that's not always going to match up perfectly. And of course, treaties have non-reciprocal results sometimes, but in the end, the text... Do you concede here that the implication of your position is there are not reciprocal or at least equivalent reciprocal benefits to Canadian taxpayers as there are to American taxpayers? Well, it's not exact because they have different systems. They have different provisions in their tax code, which we don't know in this case because it hasn't been developed as to what those might be. They don't have a comparable 1411 that they treat differently. So far as I know, no. They may have other... They may have others. Signs of taxes that we don't have in the U.S. and we would have to look to the agreement to determine how those are treated.  And the agreement spells some of those out, right? Yes. There's things like the provincial taxes that are spelled out, and the agreement also spells out something regarding our social security taxes about how they should be treated that may be different than we would treat them under just the basic foreign tax credit and things like that. Correct. Yes. Okay. Mr. Brouillet, if we were to conclude that the enactment of the 1411 tax and placement in Chapter 2 violated the general principles of the treaty, then would you agree that Mr. Brouillet is entitled to a credit, a foreign tax credit under those circumstances? In paragraph 2, did you say? Sorry. If we were to conclude that the enactment of the 1411 tax and placement of it in Chapter 2 violated the general principles of the treaty, then would you agree under those circumstances that Mr. Brouillet would be entitled to a foreign tax credit here? Well, we don't think there's any basis for that, of course. The hypothetical. Right. Right. If we were to conclude that the placement of the 1411 tax in Chapter 2 violated the general principles of the treaty, wouldn't you agree that under those circumstances Mr. Brouillet would be entitled to a foreign tax credit? As a later enacted text, it may well, but I would note that the general principle here, as explained in the technical explanation, is the general principle of paragraph 1. And paragraph 1 is the credit against income tax that is conditioned on the provisions and limitations of U.S. law. Now, we don't think that. Oh, sorry. I'm obviously relying on this one phrase from Article 24 about without changing the general principles hereof. Correct. And so you're saying, no, what's happening here with the 1411 tax is not violating the general principles of the treaty. Can you think of an example that would violate the general principles of the treaty? Because I can't think of one that the government would agree to. Of course, the language is in the article, so we have to have something. And then I can better understand the conception of your argument if you can give me an example. Well, let me ask you, let me try a hypothetical if, oh, this will be helpful. Probably not. But if Congress decides, oh, we don't like all of this basic income tax being subject to the foreign tax credit, so it divides up basic income tax provisions and says, well, some of your income tax is under Article 1 still, but some of it is under now Article 2B. And it explicitly does that to reduce the foreign tax credit, which would seem inconsistent with the spirit of this treaty. But assuming we believe the limitations clause is what you said is still permitted under this treaty. Correct. What's the remedy? Is that a judicially enforceable remedy, or is that a sovereign-to-sovereign treaty problem? I think that's more of a sovereign-to-sovereign issue. I would point out that Article 26.3 recognizes that there will be double taxation in certain circumstances and that the competent authority for each country may consult and figure out how to resolve those issues. And as for specific taxpayers, there are the procedures that Mr. Bourdieu used here, but then withdrew from, to resolve an individual taxpayer's issue. So let me ask you again, because I have a feeling I've led you astray from what my colleague was trying to argue. Let's say we have these two provisions. One is the specific limitations provision, which has applied U.S. law. The other is the more general one. If Congress does something that violates the more general one, but would still require a certain result under that, under the more specific one, are the courts entitled to order a refund? Because the new placement of something outside of Article I violates that general principle of the treaty. Well, the general principle of Article 24.1 is to relieve double taxation via the credit that is in accordance with the provisions and subject to the limitations. Congress could tomorrow enact a statute that basically takes every income tax in the Internal Revenue Code and puts it in a new subchapter 2B. And so there is no more foreign tax credit under U.S. law. They could do that, right? They won't, but they could. They won't, but they could. But if they did that, then your argument coming in here would still be no foreign tax credit anymore because it's subject to the limitations and conditions of U.S. law, even though that might violate the tenor of the treaty. Is that right? Yes. I think, yes. That kind of amendment would not be changing the general principles underlying the treaty? Well... Being out of Chapter 1. Correct. Shaking it all out. Shaking it all out so there's no more foreign tax credit at all. Getting completely rid of the foreign tax credit, yes. I think that that would. But again, the likelihood of that happening is next to nothing. There is no jurisdiction in the world that doesn't provide some relief to double taxation except no tax jurisdiction. It's like we have found an example. Well, yes. I mean, yes. I mean, the general principle of Paragraph 1 is that there will be a credit subject to the provisions and limitations of U.S. law. So if you got rid of the credit, then yes, I think that would be, that would violate that, I think. Can I ask your view on page 6 of the appendix the Court of Federal Claims wrote? When it comes to a treaty, there is a notable difference from other legal instruments. Courts are encouraged to consider a treaty's purpose as well as extrinsic evidence of the intent of the parties to the treaty. You agree or you disagree? Yes. Yes. I mean, I agree. Sorry.  I agree, yes. You agree. And that's problematic for you because you agree that because we're interpreting a treaty, we need to consider, we're encouraged to consider the treaty's purpose and also the extrinsic evidence of the intent of the parties. You agree that I need to do those things, right? Well, that is a general rule to you. First you, the import of the treaty language is the most important. But we don't think that that is a problem for us in terms of looking at the purpose because the purpose was never to eliminate all double taxation. In this case, do I need to consider anything beyond the text of the treaty? No. I think the text answers all of the questions. The 24-1, the plain text clearly states that the credit against U.S. income tax is conditioned in accordance with the provisions and subject to the limitations of U.S. law and the credit referenced in 4b. We know from the resourcing provision that there would be no reason to have that resourcing provision in there unless the parties understood the code to apply. We know from the technical explanation, which Canada endorsed, that paragraph 4b is subject to the rules of paragraph 1. That's what the technical explanation says. It also says that paragraph 6 is necessary to implement the objectives of paragraph 4b. You're out of time. Okay. But we'll give you two minutes for rebuttal. Thank you very much. Thank you. Good morning. My name is Stuart Horwich and I represent the taxpayers in this case, the appellant Paul Brugge. It's a foreign tax credit case. I think that we all, including the government, agree that the elimination of double taxation is the purpose that is underlying Article 24. It's a very simple problem here. Mr. Brugge sold some property in Canada. He paid Canadian income tax. He paid British Columbia tax. That was in excess of the amount of tax that he paid would have been due in the United States. In addition, he had to pay the net investment income tax. Paying the net investment income tax is, in fact, double taxation. I don't want to get into the details of this too much because I don't think it's germane to the specific question, but he has more foreign tax than he could apply against U.S. tax under the government's view of the foreign tax credit. And so you want it to apply to 1411 too? Correct. Can he not carry over that foreign tax credit to subsequent years, the excess foreign tax credit? He can, but that's an... So in essence, he's not necessarily losing out on this foreign tax credit because he sold some property this one year. He can carry this over. Can he carry it back? He can carry it back one year. He can carry it forward 10 years, but in answer to the question directly, certainly the carry back and the carry forwards can mitigate to a degree double taxation, but it's only a mitigation and probably a specious one at that because next year, go to year two, if he has more net, he's got the same problem that has to carry forward. And in addition, the Canadian tax is going to be higher in year two than the U.S. tax because Canada is a higher tax jurisdiction. When we talk about France, we'll find out that France is a higher tax jurisdiction as well. So nice to have... I think Americans might be surprised to hear that our taxes are not the highest, but...  I've lived abroad for a long time and I do laugh at that. So I understand your basic point that the general purpose of this treaty is to avoid double taxation, but I think the treaty itself recognizes that it's not going to avoid all double taxation. So the question is, where do we draw the line, right? Correct. Double taxation, the point that we would have here is what do we mean by the in accordance with the provisions and subject to the limitations? And if you look at the overall structure of Article 24, that will be, and the technical explanation I might add, that will be how can we compute the proper amount of Canadian tax that will be applied against the United States tax? Those are the provisions and the limitations. The government's argument gets in... The limitation, the calculation. I understand this is the way the trial court read that provision to apply only to calculations, but it seems a much broader phrase, provisions and limitations, than just apply the US rules regarding calculation of the foreign tax, which is what the trial court got, and then recognizes even then we're going to deviate from those calculation rules in 4, 5, and 6.  Okay. I can, easy enough in terms of calculating a tax, you would say, gee, what's the income? How much is the credit? What's the foreign exchange rate? Which basket does it fall in? But there are times that the code itself will disallow or postpone the use of a Canadian tax. It seems to be an overly narrow reading of the provisions and limitations language in the treaty. I mean, the full phrase, I think, is in accordance with provisions of and subject to the limitations of US law. And to me, in accordance with sounds a lot like in accordance with, I mean, in compliance with. In compliance with the law of the code seems to be what that phrasing is trying to say. And that's in compliance with all of the code, not just the pieces of the code that deal with computation. So I don't follow why you think it's appropriate to narrow down that phrasing to just the pieces of the code that deal with computation. As I said, okay, taking that at face value, then let's read the rest of the sentence of Article 24.1 because it then goes on to say that in accordance with and subject to the limitations of United States tax, a defined term which will include the net, a credit shall be allowed against Canadian tax. Canadian tax under the code is narrower than what is defined in Article 24.7. So you could literally be looking at a, if we say that it is not, when I say computational and basis, computational like is there a disallowance, isn't there a disallowance? How much is? How much isn't? Has it accrued? Has it not accrued? If you would say that the code always wins, then you can't have 24.7 define what is a Canadian tax, which is in contradiction to the code. Two different topics though, and I feel like this confuses the question about what US tax is subject to a foreign credit and what foreign taxes comprise the universe of the foreign credit. They're not the same, they're not, I agree with you that there are different and they're not parallel, but that just recognizes there's different taxation structures in both countries. So to say that this talks about Canadian taxes and what they're included is different, doesn't answer the question of what the limitations and provisions on US tax law means. But the in accordance language covers both US tax and Canadian tax, it's in the same sentence. I mean, it says in accordance with the provisions and subjects to the limitations of the law of the United States. Right. It doesn't say in accordance with the law of Canada for determining what income tax a US taxpayer pays is subject to the limitations. But I don't understand your argument about why it matters what the universe of Canadian taxes is that can be used as a credit, how that affects what US tax is subject to that credit. They're two different questions. They're necessarily two different questions. The treaty itself recognizes that there are certain taxes that aren't normally taxes of Canada, like the provincial taxes, but should nonetheless be included in the foreign tax credit. That's answering the separate question of looking at the Canadian structure, here's the list of taxes you can include as your foreign tax paid. And then you look at what US tax paid that offsets. But there's not any parallelism there.  The. Let me just you can answer that, but let me just ask you, seems to me you're reading and we talked about it a little bit on your on your opposing counsel's argument, your reading would also suggest that the foreign taxes paid in Canada could offset that whole laundry list of 26B taxes that are income taxes, but are nonetheless excluded from the foreign tax credit in the US. Do you agree that's the logic of your argument? Yes. And so you think that when they negotiated this, that the United States thought that this was going to provide a complete radical departure from the foreign tax credit in the IRC? Well, if you look at when you say radical departure, I think that we have the 26B is not what I would describe as a radical departure. There's a whole list of taxes in 26B that are not considered for offset. I understand. I have to get my treaty for a second. If you look at Article 2 of taxes covered, you will see that Article 2, this is Appendix 537. 547? 537. This is Article 2 of the treaty. Article 2 of the treaty, Appendix 537. You will see that there is a carve out to United States income tax. Sorry. Hold on a second. Article 2, General Taxes Covered, Article 2, Appendix 537. Oh, sorry. 537. Sorry. 3-7. Thank you. You will see that there's carve outs to that, which you will find some of those are precisely the ones that are in 26B. Right. Which means that if they intended to specifically include the 26B ones, they put it in the treaty. They didn't do it by operation of this general term, all U.S. income taxes. I'm sorry. I think it's the, when they included it, they included it only with respect to the 26, if we look at 26B-1, it's the accumulated earnings tax, which is carved out in 26B. 26B would not allow the accumulated earnings tax or the excise tax for 26-2. Those two provisions do not, would not give you a credit in 24 because it only applies to specific articles. I don't understand how any of this is helping you. These are very specific rules negotiated between the parties to apply portions of the United States Code in a specific way, but you're saying the overall principle overrides all of the other specific provisions of the U.S. Code sub salientio. I mean, that's just not, I understand we interpret treaties a little bit differently. That's just not the way you do textual interpretation to say, well, there's a general principle that overrides the way we do specific things. If they carve out specific things and leave others uncovered, then presumably those aren't carved out. And I agree. And because they do carve out certain taxes that fit within 26B, so they still doesn't answer what subject to the provisions and limitations of means. It's a much broader phrase than you're saying it is. I don't understand how you limit it to a computational rule. Can you point to any text in the treaty itself that would tie that provision, the U.S. law limitation, to computation, to calculation of the tax itself? Is there any textual support for that? It is in the technical explanation there. Right, but that's not the text of the treaty. In the text of the treaty, do we have any textual tie that we could use to read the U.S. law limitation as narrowly as you're asking us to? Let's posit a situation where we have a U.S. citizen living in Canada who is generating some U.S. source income. Let's say I was living in Canada. I'm a U.S. citizen. I'm in Washington arguing a case. I'm generating U.S. source income. 26-3 has to resource that income to be Canadian source because the Canadians have primary taxing rights. That would suggest that the reason for that limitation is that we need to compute the right amount of tax. So it is imperfect, but it is there. There is the phrase in 24-1 expressly making it subject to the provisions of paragraphs 4, 5, and 6. That's 24, 4, 5, and 6, right?  Doesn't that harmonize the government's interpretation of when the U.S. law limitation applies and when it doesn't? My example here proves that wrong because the subject to language in 24-1 does not include paragraph 3. It only is 4, 5, and 6. For 4, 5, and 6, to the extent the trial court was concerned that the government had no logical principle for when the U.S. law limitation applies and when it doesn't, that's not really fair with respect to 4, 5, and 6. From the subject to language, that is, except for 4, 5, and 6. You would agree with me for 4, 5, and 6. For 4, 5, and 6, I think you could read it both ways. But 3 also says it's for the purposes of this entire article. So even though it wasn't included up above, it's still a qualification on 1, right? Because it said for purposes of this article. But then you also have the U.S. law limitation, which one then? This is a more specific treatment that deviates from it. So you get the deviations in 4, 5, and 6, but you also get the deviation in 3. I mean, it's not the clearest written treaty in the world, but I just fail to see how your argument in the trial court's decision that provisions and limitations is only limited to calculation. I mean, that's just not generally the way I would read those words. And I'm particularly troubled by what I think in your brief on page 14 at footnote 7, you suggest that the language in the Croatia treaty is somehow different and has a different purpose. It may be different, but it's in a clause that looks an awful lot like the one we have here. It just, instead of saying subject to the provisions and limitations, it says to the extent allowed under the law of the United States. Without the general principle language at all. Yeah, but that's the problem, is you want to have the general principle override the subject to the limitations and provisions clause. That just can't happen. All we're trying to determine is what the subject to the limitations and provision clause means. In the parallel language in the Croatia treaty, as noted in your footnote, but also I pulled up the whole article, it's structured not exactly the same, but very similar. And all these treaties are structured very similarly because they all come from a model convention on double taxation, which looks like a lot like all the ones at issue here with slight modifications in every one, like three, four, five, and six, because countries have slightly different rules for some of these specific things. And what I would have to say here is we're getting on to, that in the case of an ambiguous situation, and clearly there's a lot going on here, then other principles in terms of treaty interpretation would apply. Well, that presumes it's ambiguous. I mean, the Supreme Court has instructed us, not certainly in tax law, but in administrative law, that just because parties disagree or because there's two possible readings doesn't render it ambiguous. It's told us we have to look harder and determine whether it really is ambiguous or if it's just a hard statutory interpretation question. And I don't see anything necessarily ambiguous about subject to the provisions and limitations. I know you have arguments on the other side that you convinced one trial court to accept on this point, but if we don't find it ambiguous and we don't get to any of these different deference questions on treaty interpretation, do we? The standard for the treaty interpretation is the shared expectations of the parties based on the words and based on what they're trying to achieve. What they're trying to achieve here is elimination of double taxation. But not all? Not all. But reciprocity would be such that it would be, as Judge Scalia would have said, incomprehensible for the Canadians to agree that if this property were located in Montana rather than Alberta, that Canada would have to give a credit for the net, which is undisputed, as opposed to the other way around, when the property is located in Alberta and America will not give a credit for, will not let you offset the net. That is not a possible treaty negotiation. That sounds like a treaty problem, not a looking at the statutory terms, and it's what we were talking about with your opposing counsel before. Let's just assume that the plain language of this suggests that the 1411 tax is not subject to a foreign tax credit under the treaty. But nonetheless, when the United States placed it in that, it violated the overall principle and general tenor of the treaty. Can courts enforce that kind of violation if the plain language of the treaty says apply U.S. law? And so under the tax laws, which the courts apply, the courts can't order a refund. I mean, if Canada thinks this is a problem, isn't Canada bound to go to the United States and say, look, when you put 1411 in a second part of the title outside of Title I, that violated what we thought we were doing. Not what the language says, but what was our general purpose, and renegotiate that. I would take you back to the O'Connor case at that point where you have language which was quite unambiguous that the taxpayers would have gotten a much larger benefit, and the courts said, it can't be right in a your sovereignty for mine negotiation to come to that result. So I would say no, if it's a situation where the U.S. government is. So you're essentially saying if 1411 had been in existence at the time of this negotiation, of course, it would have been included in the convention, even if it was outside of Title I. Or Canada would have included something saying we won't give a credit for the net, yes. That's what I would have expected. But I don't know what you want us to do with that. That's asking us to rewrite the terms of the treaty based upon an event that hadn't happened. And if the plain terms of the treaty exclude the U.S. crediting foreign taxes against 1411, then that's what the plain terms of the treaty does, and if Canada thinks that that's a problem and they would have negotiated otherwise, then it's up to them to raise that with their counterparts. First of all, I think that we are in a counterfactual because I do not believe the treaty is as clear as this. No, I understand. These are all hypothetical questions. I understand. Let me get your argument on what the treaty says. Okay. But following along that, the interpretation of a treaty is the shared expectations of the parties. Obviously, we can have a situation where there's a difference. We obviously have one here. However, the touchstone of the argument is the shared expectations of the parties, and we have plenty of good evidence here that the purpose here was to avoid double taxation, and this is, in my view, counterfactual. It's specifically encouraging it, propagating it. I think that when you are looking at this, the statutory interpretation rules will not translate directly into treaty interpretation laws. There's Supreme Court precedents on that as well, saying that those are not. Okay. Thank you, Mr. Erwich. We have your argument. Thank you. Sorry. Just a few points. Can I just address his last argument? Assuming we agree with him that it's ambiguous, how do these different interpretive rules for treaty interpretation apply here, and what do you think is the evidence on both sides for your opinion as opposed to his? For the shared expectations? Yeah. Yes. Well, we think that the text spells out pretty clearly what the expectations were, that there's a credit that would... No, you don't need to go through that. I'm sorry. Yeah. Hypothetically, if we find that it is ambiguous, then the text itself, and we have to look to outside evidence for the interpretation. How does that play out in your view? Well, the technical explanation, I think, makes it very clear that in support of the  I don't want to sound like a broken record, but, for example, with... Isn't there a principle that we're supposed to apply of liberal construction that, in this particular instance, would be in favor of the taxpayer? Well, the import of the language is the key here, and... You don't disagree with the liberal construction principle of the treaty? I mean, that's our precedent, I believe. Well, no, not as that, but I don't think that... I don't think you need to get to that, because the text is so clear here. But if it sounds like you're conceding that if we get beyond the text, there's really not much that helps you. There's maybe a little bit in the technical explanation, although there's a lot that favors them. So you need us to stick to the text for you to win. Is that right? Well, I think we do win under the text. I understand that. What if you... The questions, though, I think we're all asking is, what if, hypothetically, you don't win on the text? Can you articulate for us how you win, nonetheless? Well, again, I... Again, the technical explanation, which Canada endorsed, supports the government's position here. Where? What in the technical explanation? For example... I'm trying to point to a lot of things that provide rules that suggest that this should be applied just for calculation. Although I know your response is, those are just examples, not... It's not an exhaustive list. Where's a positive piece of evidence on your side on the technical explanation? That the credits are allowed by paragraph one are subject to the limitations of the code. That's on page 254. The Treasury's interpretation is entitled to great weight, Canada endorsed it, in specific with respect to paragraph 4B and the credit that's referenced there. The technical explanation is very explicit in saying that the rules of paragraph one apply in paragraph 4B. And it's also explicit in saying that paragraph six is necessary to implement the objectives of paragraphs 4B and 5C. And so, we know what Canada thought here, they endorsed this. And so I don't think there's much need to go beyond that. Okay, I think we have your argument. Okay, thank you. We'll see you again soon. Thank you. All right. The case is submitted. Thank you.